**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**



JUL 3 0 2008

CLERK, U.S. DISTRICT COURT
ALEXANDRIA, VA

**Alexandria Division**

|  |  |
|---|---|
| GEOFFREY R. AKERS,<br><br>          Plaintiff,<br><br>v.<br><br>CARLOS GUTIERREZ, et al.,<br><br>          Defendants. | Civil Action No. 07-1000 |

**MEMORANDUM OPINION**

This matter comes before the Court on cross motions for summary judgment.  Plaintiff filed suit against his former employer under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, et seq., and the ADEA, 29 U.S.C. § 621, et seq., alleging unlawful employment discrimination.

Plaintiff, Dr. Geoffrey R. Akers, began working at the United States Patent Office (USPTO) in 1999 and was promoted to Primary Patent Examiner after approximately two and a half years. On June 1, 2004, the USPTO announced a vacancy for the position of Supervisory Patent Examiner (SPE).  Plaintiff and seven other individuals submitted applications for this position.  Of the seven other individuals, six were men and all seven were younger than Plaintiff.

On July 9, 2004, the USPTO convened a ratings panel of three

individuals to review the eight applications; each member of the panel held the SPE position.  The panel calculated an aggregate score for each applicant by rating each applicant in all of the five factors listed in the SPE vacancy announcement: 1) Ability to Supervise and Perform Administrative Duties, Including Effectively Motivating, Leading and Training Patent Examiners and Other Employees; 2) Knowledge of Scientific and Technical Matters Associated with the Patent Process in the Designated Art Area; 3) Knowledge of Legal Matters Associated with the Patent Process in the Designated Art Area; 4) Knowledge of Patent and Trademark Office Strategic Direction; and 5) Ability to Communicate Effectively Orally and in Writing.

With respect to the first factor — ability to supervise — the panel awarded Plaintiff 15 points, in the mid-range of the highly satisfactory level for this factor.  The panel stated that Plaintiff monitored and supported other examiners in performing their job duties, but noted that this was a typical requirement of a primary examiner.  The panel further noted that Plaintiff's prior work experience did not demonstrate special experience in performing administrative duties, motivating employees, and training.  Of the other applicants, four scored 25, two others scored 15, and one scored 10.  The panel stated that the applicants that scored higher provided specific examples of their ability to train, motivate, and perform administrative duties,

2

while Plaintiff did not.

     With respect to the second factor — knowledge of scientific
and technical matters — the panel awarded Plaintiff 11 points, at
the bottom level of the outstanding category for this factor.
Plaintiff received this score on account of his numerous degrees,
including one in nuclear engineering.  The panel indicated that
it declined to rank Plaintiff higher because he simply listed his
degrees and failed to provide evidence that he had received
recognition by others for his expertise and competency in the
patent field.  Two applicants scored higher than Plaintiff in
this category: one received 15 points, the other received 13.
The remaining five applicants received 5 points each.

     With respect to the third factor — knowledge of legal
matters — the panel awarded Plaintiff 8 points, in the mid-range
of the highly satisfactory level.  Plaintiff received this score
because he completed USPTO-sponsored legal studies, but did not
score higher because he failed to list any other relevant
experience.  The applicants scoring higher than Plaintiff
received scores of 18, 17, 15, 14, and 13.  Two applicants scored
lower than Plaintiff and received scores of 5.

     With respect to the fourth factor — knowledge of USPTO
strategic direction — Plaintiff received a score of 6 points, at
the low-end of the highly satisfactory level.  Plaintiff failed
to score higher because his application did not indicate that he

sought out leadership roles within the USPTO, which other applicants had done.  The applicants scoring higher than Plaintiff received scores of 10, 10, 9, 8, and 8.  Two applicants received scores of 5.

With respect to the fifth factor — ability to communicate effectively — Plaintiff received a score of 8 points, at the bottom of the outstanding level.  Plaintiff was given this score because he indicated he had written numerous publications in various fields and had delivered an oral presentation.  Two other applicants received scores of 9 in this category, three others received scores of 8, one received a score of 7, and one received a score of 4.

In aggregating the scores across the five factors, Plaintiff received a score of 48, the third-lowest score.  The two applicants receiving scores lower than Plaintiff - both males - received scores of 29 and 38.  The five applicants receiving scores higher than Plaintiff received scores of 59, 61, 64, 66, and 69.  The panel certified the five applicants scoring higher than Plaintiff as being promotion-eligible and forwarded their names to the Selecting Official.  Plaintiff was not one of the applicants chosen to be certified.  Ultimately Tuyet Phoung Luu, the lone female candidate, was selected for the position.  Luu received a score of 66 from the ratings panel.

On August 18, 2004, Plaintiff contacted the USPTO Office of

Civil Rights and alleged that he was not selected for the SPE
position on account of unlawful discrimination.

In October and November of 2004, Plaintiff was questioned by
agency officials about a potential financial conflict of interest
he had with some of his cases.  These conflicts arose because of
Plaintiff's outside work as a principal and researcher with the
National Association of Securities Dealers, Inc.  The USPTO gave
Plaintiff a choice between transferring to a different art unit
within the PTO or giving up his outside work.  Plaintiff chose to
transfer to a different unit and was prohibited from working on
certain cases because of the potential conflict.

On or around December 1, 2004, Plaintiff filed a formal
discrimination complaint.  In January, 2005, Plaintiff retired
from the USPTO.  Upon his retirement, Plaintiff applied for a
registration number from the USPTO that would permit him to
practice patent cases before the USPTO.

On May 22, 2006, the Equal Employment Opportunity Commission
(EEOC) issued a final decision concluding that Plaintiff failed to
establish a claim of employment discrimination.  Plaintiff
appealed the decision to the EEOC Office of Federal Operations
(OFO), who affirmed the EEOC decision on October 19, 2006.  The
OFO denied Plaintiff's request for a rehearing and adopted the
October 19 decision as its final decision.  Plaintiff initially
filed suit in the United States District Court for the District

of Columbia, which transferred the case to this Court because of
improper venue.

On December 7, 2007, the USPTO issued a sixteen page
decision denying Plaintiff's application for a registration
number to practice before the USPTO.

Summary judgment is appropriate where there is no genuine
issue as to any material fact. See Fed. R. Civ. P. 56(c). Once a
motion for summary judgment is properly made and supported, the
opposing party has the burden of showing that a genuine dispute
exists. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,
475 U.S. 574, 586-87 (1986). A material fact in dispute appears
when its existence or non-existence could lead a jury to
different outcomes. See Anderson v. Liberty Lobby, Inc., 477
U.S. 242, 248 (1986). A genuine issue exists when there is
sufficient evidence on which a reasonable jury could return a
verdict in favor of the non-moving party. See id. Mere
speculation by the non-moving party "cannot create a genuine
issue of material fact." Beale v. Hardy, 769 F.2d 213, 214 (4th
Cir. 1985); see also Ash v. United Parcel Serv., Inc., 800 F.2d
409, 411-12 (4th Cir. 1986). Summary judgment is appropriate
when, after discovery, a party has failed to make a "showing
sufficient to establish the existence of an element essential to
that party's case, and on which that party will bear the burden
of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322

6

(1986).  When a motion for summary judgment is made, the evidence presented must always be taken in the light most favorable to the non-moving party.  See Smith v. Virginia Commonwealth Univ., 84 F.3d 672, 675 (4th Cir. 1996) (en banc).

Plaintiff's Complaint alleges that he was subjected to disparate treatment and retaliation in violation of his rights under Title VII and ADEA.  In the absence of direct evidence of discrimination, summary judgment motions under Title VII are analyzed under the McDonnell Douglas burden-shifting framework whereby the plaintiff must make a prima facie showing of discrimination, after which the defendants may rebut that prima facie showing by demonstrating that its behavior was legitimate and non-discriminatory.  See McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802-805 (1973)  If the defendants have made a rebuttal showing, the plaintiff may survive summary judgment by demonstrating that the defendants' arguments are pretext for discrimination.  Id.

Plaintiff's claim that Defendants violated Title VII by failing to promote him is a claim for disparate treatment.  A plaintiff establishes a prima facie case of disparate treatment in this context when he shows that (1) he belongs to a protected class, (2) he applied for and was qualified for the position in question, (3) he was not selected, and (4) an individual outside his protected class was selected.  Bryant v. Aiken Reg'l Med.

7

<u>Ctrs. Inc.</u>, 333 F.3d 536, 544-45 (4th Cir. 2003).  In the age discrimination context, the individual selected must be "substantially younger" than the plaintiff.   <u>Warch v. Ohio Cas. Ins. Co.</u>, 435 F.3d 510, 513 (4th Cir. 2006).  Defendants concede that Plaintiff has established a <u>prima</u> <u>facie</u> case because Plaintiff belongs to a protected class based on his age and gender, was qualified for the SPE position, and was not selected for the position in favor of a younger woman.  Indeed, the EEOC concluded that Plaintiff had established a <u>prima</u> <u>facie</u> case of disparate treatment when it issued its final decision.

However, Defendants put forward legitimate, nondiscriminatory reasons why Plaintiff was not selected for the SPE position.  The main reason Plaintiff was not selected was because the review panel rated his qualifications lower than the other applicants in the five factors relevant to the SPE position.  Plaintiff not only ranked lower than the woman who was selected for the position, but also ranked lower than four other men who applied.  The panel provided reasons why Plaintiff scored the way he did on the various factors as well as reasons why Plaintiff's score was not as high as other applicants' scores. Moreover, Plaintiff was one of seven applicants who were not selected to the SPE position.  Indeed, there were four applicants who received higher scores than Plaintiff who were not selected for the position.

8

Plaintiff attempts to show that Defendants' legitimate reasons for promoting Luu instead of him by arguing that he had superior credentials for the SPE job. Plaintiff points out that he has multiple advanced degrees while Luu had only a bachelor's degree in mechanical engineering at the time she was hired. Plaintiff also notes that he possessed a security clearance and, at the relevant time, Luu did not. The Fourth Circuit has held that "[w]hen a plaintiff asserts job qualifications that are similar or only slightly superior to those of the person eventually selected, the promotion decision remains vested in the sound business judgment of the employer." Heiko v. Colombo Savings Bank, F.S.B., 434 F.3d 249, 261 (4th Cir. 2006). Here, Plaintiff can make no showing that his job qualifications are more than slightly superior to Luu's for the SPE position. The vacancy listing stated that a security clearance might be necessary for the SPE position and did not indicate that it was a requirement. Also, the listing did not state that advanced degrees in various engineering fields were a requirement of the position. Moreover, Defendants have articulated perfectly legitimate reasons why Plaintiff's score from the panel was not higher.

Plaintiff has also failed to put forward any circumstantial evidence suggesting Defendants' articulated reasons for its promotion decision were pretext for discrimination motivated by

9

age or gender.  Indeed, both the applicants who received lower scores from the panel were male.  Furthermore, one of the five applicants who scored higher than Plaintiff was only six years younger than Plaintiff.  Plaintiff's evidence fails to show that either age or gender played a role in USPTO's decision to promote Luu.  Consequently, Plaintiff has failed to show that Defendants' reasons for not promoting Plaintiff were pretext for age or gender discrimination.

Plaintiff also argues that Defendants violated Title VII by retaliating against him for making a complaint to the EEOC. Plaintiff alleges that Defendant retaliated against him by having meetings with him concerning a potential financial conflict of interest in some of his cases, and by not giving him his requested registration number.  To establish a prima facie case of retaliation, Plaintiff must show: (1) that he engaged in protected activity, (2) that an adverse employment action was taken against him, and (3) there is a causal link between the protected activity and the adverse employment action.  Mackey v. Shalala, 360 F.3d 463, 469 (4th Cir. 2004).

Plaintiff cannot establish a prima facie case of retaliation because he is unable to show that an adverse employment action was taken against him.  An "[a]dverse employment action includes any retaliatory act or harassment if, but only if, that act or harassment results in an adverse effect on the 'terms,

10

conditions, or benefits' of employment." <u>Von Gunten v. Maryland</u>,
243 F.3d 858, 866 (4th Cir. 2001)(quoting 42 U.S.C. § 2000e-3).
Here, Defendants' meetings with Plaintiff concerning his
potential financial conflicts of interest do not have an adverse
effect on the terms, conditions, or benefits of Plaintiff's
employment.  Due to the presence of potential conflicts,
Plaintiff was given the choice between giving up his outside work
that created the potential for conflict and remaining in the same
unit, or transferring to a different unit and keeping the outside
work.  Plaintiff chose to transfer.  As the terms, conditions,
and benefits of Plaintiff's employment did not change as a result
of Defendants' meetings with him, the meetings do not constitute
an adverse employment action.  Moreover, confronting an employee
about a potential concern that could yield a negative result for
the USPTO simply does not rise to the level of a materially
adverse employment action.

The same is true for Plaintiff's allegation regarding
Defendants' failure to give him a registration number.  Denying
Plaintiff a registration number for post-employment work before
the patent office simply does not alter the terms, conditions,
and benefits of Plaintiff's employment.  Indeed, Plaintiff
presents no evidence that a valid registration number actually
constitutes a term, condition, or benefit of a Primary Patent
Examiner.  Furthermore, Defendants have articulated legitimate

11

non-discriminatory reasons for their actions by issuing a
detailed report outlining the reasons why Plaintiff was not
entitled to a registration number.  Defendants' denied
Plaintiff's request because he failed to satisfy his burden to
show the requisite good moral character and reputation required
to practice patent cases before the USPTO.  Defendants cited two
reasons for this conclusion.  First, Defendants noted that
Plaintiff continued to work on a patent application that he had
been screened from after he had agreed to switch units on account
of his potential conflict of interest.  Second, Defendants noted
that Plaintiff indicated that a particular applicant's attorney
had expressly abandoned an application in a phone conversation
with Plaintiff.  However, Plaintiff had only spoken to the
attorney's secretary and the attorney did not wish for the
application to be expressly abandoned.  Plaintiff has made no
showing that these reasons for denying his request for a
registration number are pretext for age or gender discrimination.

     For the reasons stated above, Defendants are entitled to
summary judgment.

     An appropriate order shall issue.

                                        /s/
                                   Claude M. Hilton
                              United States District Judge

Alexandria, Virginia
July 30 , 2008

12